IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-00616-EWN-PAC

ROBERT A. NEELY,

        Plaintiff,

v.

C.D.O.C. - JOE ORTIZ, *et al.*,

        Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Patricia A. Coan, United States Magistrate Judge**

        This is a §1983 prisoner civil rights case.  Plaintiff filed his *pro se* amended

complaint [hereafter AC] on December 23, 2003, contending, among other claims, that

his Eighth Amendment rights had been violated when defendants failed to treat him for

the   Hepatitis C virus (hereafter HCV). A May 29, 2003 General Order of Reference

referred this case to the undersigned for pretrial case management and for

recommendations on dispositive motions.  Defendants Ortiz and DeCesaro have been

dismissed, but the complaint has not been ordered amended to reflect their dismissal.

See September 28, 2004 Order.  Plaintiff has been represented by volunteer counsel

since November 5, 2004.   The matters now before the court are: (1) plaintiff's Motion

for Partial Summary Judgment, filed May 23, 2005 [doc. # 233]; (2) the Colorado

1

03-cv-00616-EWN-PAC
March 1, 2006

Department of Corrections defendants McGarry, Bloor, Creany, Watkins and

Masterson's (CDOC defendants) Motion for Summary Judgment filed May 23, 2005

[doc. # 235]; and (3) the Kit Carson Correctional Center defendants Brill, Fuchs,

Wederski and Hill's (KCCC defendants) Motion for Partial Summary Judgment, filed

May 23, 2005 [doc. # 237].  I heard oral argument on the pending motions August 30,

2005.   The CDOC defendants filed a status report concerning plaintiff's HCV treatment

on October 7, 2005, accompanied by an affidavit of Dr. Cary Shames, Chief Medical

Officer of the CDOC [doc. #278].  Plaintiff responded to the CDOC status report on

November 7, 2005 [doc. # 279].

I. Background

Plaintiff, an inmate at the Fremont Correctional Facility (FCF),[1]  seeks injunctive

and monetary relief[2] through 42 U.S.C. §1983 from the defendants for failure to treat

certain medical conditions in violation of the Eighth Amendment.  He also asserts state

law claims for intentional infliction of emotional distress, negligence,  and medical

malpractice.  *See* AC at 8-12.  Mr. Neely further claims that defendants Blake and

Wederski violated Neely's First and Fourteenth Amendment rights by failing to accept

---

[1]Plaintiff is presently at the Fremont Corrections Facility (FCF), but was incarcerated at the Kit Carson (KCCC) facility from September 5, 2002 until July 8, 2003, and again from November 2, 2004 until March 15, 2005.  The remainder of plaintiff's incarceration has been at FCF.

[2]Volunteer counsel declined the opportunity to amend plaintiff's complaint.  In the fifty-eight page *pro se* amended complaint, plaintiff seeks only monetary damages for each of his claims.  Plaintiff also refers to his motions for temporary restraining order and permanent injunction, which sought a medical transfer from the KCCC facility and commencement of interferon-ribavarin (I/R) treatment.  AC at 55.  I construe these pleadings as a claim for injunctive relief.  See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) ( *Pro se* pleadings are to be construed liberally).

03-cv-00616-EWN-PAC
March 1, 2006

his grievances.  As a result of the defendants' actions, plaintiff contends he is not

receiving the treatment or medications he needs and was not allowed to participate in

substance abuse classes to "earn his treatment for Hepatitis C."   Plaintiff claims that

because he has not received treatment for HCV, he suffers from itching, pain and

suffering, bleeding, sleep deprivation, depression, ringing in his ears,  liver and

pancreas pain, emotional pain, stress and anxiety, memory lapses, headaches, cardiac

arrhythmia and a belief he is likely to die an early death.  *See* AC at 17-20, 23, 24.

Plaintiff currently takes medications for cirrhosis (alcohol related), complications from

the progression of HCV, diabetes, hypothyroidism, and hypertension.  See Discharge

Summary of Jay Richter, M.D., dated September 8, 2005, exhibit 2 to plaintiff's

response to CDOC's status report, filed November 7, 2005.

The CDOC has implemented a "Clinical Standard and Procedure for Health Care

Providers: Hepatitis C - Gastroenterology" (January 2000 and revised April 2004)[3]

[hereafter HCV Protocol], which sets forth standards for diagnosis and procedures for

treatment of HCV in CDOC inmates.   See  plaintiff's PSJ, exhibit 2.   The HCV Protocol

requires, *inter alia*, a liver biopsy to determine an inmate's suitability for I/R therapy if

he has previously met the other prerequisites for treatment.  See plaintiff's PSJ, exhibit

2, HCV Protocol, at 4 ¶A. 1. -6.  (identification of patients with chronic Hepatitis C) and

_____

[3]CDOC counsel has represented that the 2000 and 2004 HCV Protocols are, for purposes of the
facts in this case, nearly identical, except that the 2004 version reduced the twelve months attendance at
substance abuse classes requirement to six months.  Because the court was not given the 2000 version
of the Protocol, all cites are to the 2004 version attached to Plaintiff's  Motion for Partial Summary
Judgment (Plaintiff's PSJ) as exhibit 2.

03-cv-00616-EWN-PAC
March 1, 2006

attachment B-1 at 16. Plaintiff asserts that he is entitled to a liver biopsy and the I/R

therapy for his HCV under the HCV Protocol, and that defendants' denial of the biopsy

and treatment is deliberate indifference to Mr. Neely's right to medical treatment under

the Eighth Amendment.

The CDOC admissions data reveal that plaintiff began his current incarceration

on August 23, 2002, and that his sentence discharge date is May 12, 2009.  Exh. 1 to

plaintiff's PSJ.  To be eligible for treatment, an inmate must have at least eighteen

months remaining on his sentence. See plaintiff's PSJ, exhibit 2, HCV Protocol, at

8,¶B.5.d.   Completion of a number of substance abuse classes are a prerequisite to

enrolling in treatment for HCV.  See *id.* at 6-7;and see Attachment E-1, which is the

referral form for such classes, and Attachment D-1, which is the contract under which

the inmate agrees to attend the program.   Plaintiff complains that he repeatedly

requested not only treatment but enrollment in substance abuse (SA) classes

beginning September 7, 2002 and continuing  thereafter.  See AC ¶5.  If there are no

substance abuse classes at a CDOC facility, the HCV Protocol requires transfer of the

inmate to a facility where the classes are available. See Plaintiff's PSJ, Ex. 2 at 7.  After

the KCCC delayed in making the required classes available at KCCC, plaintiff was

transferred from the KCCC facility on the day he was scheduled to begin the class. See

plaintiff's Motion for Preliminary Injunction, filed June 21, 2004, exhibits A12 (informal

grievance regarding unavailability of substance abuse classes) and A8 (an undated

memo from the Corrections Corporation of America to prospective students of Level 4

4

03-cv-00616-EWN-PAC
March 1, 2006

Substance Abuse Program, which includes a note plaintiff wrote on the memo indicating that Mr. Neely received the memo on March 23, 2003, and that, as of that date, he had waited seven months for the SA class).  Plaintiff completed the substance abuse classes in December of 2003.  See plaintiff's PSJ, exhibits 5 (dated December 8, 2003), 12 (dated October 8, 2004), and 15 (dated November 18, 2004).

Mr. Neely's medical records show elevated levels of liver enzymes AST (SGOT), ALT (SGPT), and AFP (alpha-feto protein) as of August 26, 2002.  See Exh. 6 to plaintiff's PSJ.[4]   An August 27, 2002 CDOC Consultation Report Form described plaintiff's condition as "probable cirrhosis, HCV positive for more than five years, and requiring evaluation for fluid ascites."  Exh. 4 to plaintiff's PSJ.  On August 29, 2002, plaintiff reported to the CDOC that he had Hepatitis B and C, hypertension, and an enlarged heart. Exh. 3 to plaintiff's PSJ.  On February 21, 2003, defendant Hill, a physician's assistant or other level of health care provider at KCCC, spoke with Dr. Bloor, who informed her that the ultrasound of plaintiff's liver was sufficient to rule out hepatoma (primary liver cancer), and that the AFP level of 44 was relatively low for plaintiff's condition.  Plaintiff's PSJ, exhibit 8.  Hill reported that Dr. Bloor said that if plaintiff had completed the required drug classes, Dr. Bloor could order a liver biopsy.

---

[4]SGOT, SGPT and AFP levels are typically elevated with advanced liver disease.  When HCV damages liver cells, abnormally large amounts of the enzymes SGOT and SGPT are released from the cells into the bloodstream. See *Graham v. Wright*, No. 01 Civ. 9613, 2004 WL 1794503 at *2 (S.D.N.Y. 2004).

*Id.*[5]  An August 6, 2004 lab report showed that plaintiff again had elevated AST and

ALT levels.  Exhibit 9 to plaintiff's PSJ.   Gastroenterologist Jerome Manning, M.D. saw

plaintiff on September 2, 2004, and based on his "clinical impression," stated that Mr.

Neely had " decompensated cirrhosis secondary to chronic hepatitis C."   Plaintiff's

response to CDOC status report, exhibit 3 at 2.  An October 8, 2004 Ambulatory Health

Record from FCF documented plaintiff's inquiry about his HCV treatment and indicated

that  Dr. Shames, the Chief Medical Officer of the CDOC, was contacted for the

purpose of clarifying the HCV protocol.  Plaintiff's PSJ, exhibit 12.  An October 21, 2004

Ambulatory Health Record, bearing an illegible signature,  reveals that Mr. Neely

submitted a medical kite, and that, as a result, an unidentified person spoke with Dr.

Shames, who stated that plaintiff must be compliant with all his medications for several

months before he could be considered for treatment, and that he must first have a liver

biopsy.  Plaintiff's PSJ, exhibit 13.

     At  the August 30, 2005 motions hearing,  CDOC counsel represented that

plaintiff would be scheduled for a liver biopsy.  Up to that hearing, the CDOC had taken

the position that plaintiff did not have end stage liver disease as he claimed, because

that contention had not been confirmed by a liver biopsy.  See CDOC's MSJ, Shames

affidavit at 2-3.  After the August 30, 2005 hearing, the CDOC reversed its position, and

---

[5]There is also a notation on the form stating "re: Mr. Neely's contention classes violate
constitutional rights - a federal court is close to agreeing with standards."  Exh. 8 to plaintiff's PSJ.  See
also plaintiff's grievance of January 16, 2003, exh. 5 to plaintiff's response to the CDOC's motion for
summary judgment, in which Mr. Neely again raises KCCC's  delay in providing the required substance
abuse class at KCCC.

03-cv-00616-EWN-PAC
March 1, 2006

said that Mr. Neely did not qualify for HCV treatment.  See CDOC October 7, 2005

Status Report.  The CDOC's October 2005 position was documented in another

Shames affidavit, in which Dr. Shames said that Mr. Neely was not eligible for treatment

because of lab work done the previous year which showed blood levels consistent with

decompensated cirrhosis and because of Dr. Manning's clinical impression in 2004 that

Mr. Neely had decompensated liver disease.  See CDOC's status report October 7,

2005, Shames affidavit, Ex. 4, ¶¶15-16.

To date, there is no evidence that a liver biopsy has been performed on plaintiff

to determine the grade or stage of his liver disease, or to determine whether he is a

candidate for  I/R therapy.[6]  See plaintiff's PSJ, exhibit 2, HCV Protocol at Attachment

B-1. In a  supplemental affidavit, Mr. Neely attested that he was able to complete, in

addition to the mandatory substance abuse classes, which the records show were

completed in December 2003, the Alcoholics Anonymous classes additionally required

in order to be considered for I/R therapy.  See Plaintiff's supplemental affidavit, filed

August 23, 2005 [doc. #273]; and see plaintiff's response to CDOC status report, filed

November 7, 2005 [doc. #279], exhibit 2.

## II. Summary Judgment Standard

The purpose of summary judgment is to determine whether trial is necessary.

*White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is

---

[6] I note that although some medical records are attached to the dispositive motions pleadings,
none of the parties has submitted what could be considered a complete medical file.

03-cv-00616-EWN-PAC
March 1, 2006

appropriate under FED.R.CIV.P. 56(c) when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The court reviews the pleadings and documentary evidence in the light most favorable

to the nonmoving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988).

        To defeat a properly supported motion for summary judgment, "there must be

evidence upon which the jury could reasonably find for the plaintiff."  *Panis v. Mission*

*Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   The movant bears the initial burden to "point

to those portions of the record that demonstrate an absence of a genuine issue of

material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling*

*Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).  If this burden is met, the nonmovant must

"come forward with specific facts showing that there is a genuine issue for trial as to

elements essential to [the nonmovant's claim]." *Martin v. Nannie and the Newborns,*

*Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993)(internal citations omitted).  The nonmovant has

the burden to show that there are genuine issues of material fact to be determined.

*Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the

suit under the governing law will preclude the entry of summary judgment.  *Sanchez v.*

*Denver Public Schools*, 164 F.3d 527, 531 (10th Cir. 1998), quoting *Anderson*, 477 U.S.

at 248.  The court views the evidence of record and draws all reasonable inferences in

03-cv-00616-EWN-PAC
March 1, 2006

the light most favorable to the nonmovant.  *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir. 1995).

### III. Analysis

The primary issue in the motions for summary judgment is plaintiff's Eighth Amendment claim regarding HCV treatment, and in particular, his claim of entitlement to a liver biopsy and I/R combination treatment.  Plaintiff seeks partial summary judgment on his claims that he is eligible for I/R therapy, arguing that defendants have failed to comply with the Protocol, and, that defendants' failure to comply with the Protocol, specifically by failing to provide I/R therapy, violates the Eighth Amendment.

The CDOC defendants move for summary judgment on four grounds: plaintiff's state law claims are barred; there is no personal participation by the CDOC defendants regarding plaintiff's deliberate indifference claims for treatment of HCV and his umbilical hernia; plaintiff cannot adequately support his deliberate indifference claims; and finally, that defendants are entitled to qualified immunity.

The KCCC defendants move for summary judgment, arguing that: plaintiff's deliberate indifference claim fails because he was not eligible to receive treatment during the periods of incarcerations at KCCC because he had not completed the required alcohol dependency classes; plaintiff has not suffered physical injury as a result of his incarceration at KCCC and therefore his claims are barred under the Prison Litigation Reform Act (PLRA); there is no causal link between the actions of any KCCC defendant and the purported injury; the KCCC defendants are entitled to

9

03-cv-00616-EWN-PAC
March 1, 2006

qualified immunity; and  that there can be no claim of deliberate indifference against

the KCCC defendants because they were following the CDOC's protocol.

*A. Eighth Amendment Analysis*

A prison official's deliberate indifference to an inmate's serious medical needs is

a violation of the Eighth Amendment's prohibition against cruel and unusual

punishment.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  Deliberate indifference

means that prison medical staff knew of the inmate's serious medical need, but

intentionally disregarded an excessive risk of harm to the inmate, or that prison guards

or medical staff intentionally prevented the inmate from receiving prescribed treatment

or intentionally delayed or denied him access to medical care.  *Estelle v. Gamble,* 429

U.S. 97, 104-105 (1976); *Farmer v. Brennan*, 511 U.S. 825,  837 (1994); *Sealock v.

Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *Oxendine v. Kaplan*, 241 F.3d 1272,

1279 (10th Cir. 2001).  "In order to state a cognizable claim, a prisoner must allege acts

or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs.  It is only such indifference that can offend 'evolving standards of decency' in

violation of the Eighth Amendment."  *Estelle*, 429 U.S. at 106.

A deliberate indifference claim involves both an objective and a subjective

component.  *Sealock*, 213 F.3d at 1209.  The objective component is satisfied when the

medical condition complained of is sufficiently serious, such that "it is one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt*

03-cv-00616-EWN-PAC
March 1, 2006

*v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d

559, 575 (10th Cir. 1980)).  "[Second], a prison official must have a sufficiently culpable

state of mind."  *Farmer*, 511 U.S. at  834.  The subjective component is satisfied when

the plaintiff establishes that the "defendant(s) knew [plaintiff] faced a substantial risk of

harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"

*Hunt,* 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847).  If the claim is for a delay in

medical care, it  "only constitutes an Eighth Amendment violation where the plaintiff can

show the delay resulted in substantial harm."  *Oxendine*, 241 F.3d at 1276 (quotation

omitted). The substantial harm requirement "may be satisfied by lifelong handicap,

permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th

Cir.2001).

### 1. Objective Component of Eighth Amendment Deliberate Indifference

The objective component requires the existence of a "sufficiently serious"

medical need.  *Farmer*, 511 U.S. at 834;  *Estelle*, 429 U.S. at 104.  In *Farmer*, the

Supreme Court explained that "the inmate must show that he is incarcerated under

conditions posing a substantial risk of serious harm."  *Id.*, 511 U.S. at 834.

It is undisputed that HCV is a serious illness,[7] and is "one that has been

diagnosed by a physician as mandating treatment."  *Hunt*, 199 F.3d at 1224.  It is

---

[7]Chronic infection with HCV is the most common blood-borne illness in the U.S. and the HCV epidemic has become a major concern in correctional settings due to the 8- to 20-fold higher rate of HCV infection in prison populations than in the community.  HCV is a leading cause of illness and death among inmates in some correctional facilities, and an emerging cause in others.  Scott A. Allen, *et al., Hepatitis C Among Offenders*, 67 FED. PROB. 22 (2003).

11

03-cv-00616-EWN-PAC
March 1, 2006

undisputed that Mr. Neely suffers from HCV.  The mere fact that plaintiff suffers from

the virus, however, does not convert his claim of inadequate treatment for HCV into an

Eighth Amendment violation.  Specifically, while Mr. Neely's HCV is unquestionably a

serious medical problem, the appropriate Eighth Amendment inquiry in his case is

whether plaintiff has a serious medical need for prompt  evaluation, such as a liver

biopsy, and/or whether Mr. Neely has a  serious medical need for prompt interferon

treatment.

There is no applicable, published, Tenth Circuit case law considering summary

judgment on a prisoner's Eighth Amendment claim arising from an alleged denial of

treatment for HCV.[8]  I find that an unpublished decision,  *Thomas v. Bruce*, 125 Fed.

Appx. 964 (10th Cir. 2005), is helpful, even though the court there considered a Rule

12(b) motion, instead of one for summary judgment.[9]  In  *Thomas*, the plaintiff's

pleadings concerning the objective component of deliberate indifference met the test

when a physician decided that the plaintiff's liver enzymes were sufficiently abnormal to

warrant treatment, beginning with a liver biopsy, and the prison health care services

contract provider denied the biopsy.  See *Thomas,* 125 Fed. Appx. at 967. (Attached to

this Recommendation.)

---

[8]There is one early published decision affirming summary judgment for the prison official on an Eighth Amendment claim of failure to treat HCV when the complaint failed to state a claim and there was no known treatment for the virus.  *See Handy v. Price,*  996 F.2d 1064 (10th Cir. 1993).

[9]  I reference the opinion pursuant to 10th Circuit Rule 36.3(B) and attach it to the Recommendation in accordance with 10th Cir. Rule 36(C).

03-cv-00616-EWN-PAC
March 1, 2006

<u>Liver Biopsy</u>

Mr. Neely complains that he has not been properly evaluated by means of a liver biopsy and not treated with I/R even though he has met all the Protocol pre-treatment requirements, and even though he has progressed through several of the Protocol's evaluation steps.  He argues that, under the Protocol, which applies to all prisoners who are HCV positive, he is eligible for a liver biopsy which would determine whether I/R therapy is appropriate.   Plaintiff's PSJ, exhibit 2, HCV Protocol at 9; Attachment C-1.

I recommend finding that the CDOC Hepatitis C Protocol provides for the management of *all* inmates who are HCV positive.  Pl. PSJ, Ex. 2.  The Protocol particularly identifies those diagnosed with chronic HCV, or those who are at greatest risk for end-stage liver disease and hepatocellular carcinoma, as potential candidates for antiviral (I/R) therapy. *Id.* at 3.  While I/R therapy may be denied if an inmate has decompensated liver disease, *id.*, HCV Protocol at 8-9,  even those inmates with decompensated liver disease are to be presented to the Chief Medical Officer for further management, including enrollment in prospective drug trials.[10]  *Id.*, HCV Protocol at 1, 9.  Accordingly, the Protocol provides evaluation and treatment

---

[10]The Protocol states: that "[p]atients with decompensated liver disease should be presented by the health care provider to the Chief Medical Officer or his designee as delineated in Attachment G for further management to include enrollment of (sic) prospective trials."  Plaintiff's PSJ, exhibit 2,  Protocol at 9.

03-cv-00616-EWN-PAC
March 1, 2006

considerations for all levels of HCV liver disease.[11]

Records concerning Mr. Neely's medical evaluation or treatment are imprecise and contain some significant contradictions.  For example, in his April 14, 2005 affidavit, Dr. Shames, Chief Medical Officer of the CDOC, stated that "once Mr. Neely attends the required AA classes, the DOC will proceed with obtaining a liver biopsy," and that the stage of plaintiff's liver disease was unknown because a biopsy had not been done.  CDOC's MSJ, Shames Affidavit at 2.   In April of 2005, Dr. Shames had determined that Mr. Neely's liver enzymes were abnormal enough to warrant further testing by means of liver biopsy, but a liver biopsy was not performed.  Those two facts are identical to those pleaded in *Thomas*.

Five months later, Dr. Shames reversed his former conclusion that a liver biopsy was warranted and stated that Mr. Neely was not eligible for treatment because of decompensated cirrhosis. CDOC October 7, 2005 Status Report, Ex. 4.  More specifically, Dr. Shames reached opposite conclusions on the same 2004 data, including Dr. Manning's 2004 "clinical impression" that plaintiff had "decompensated liver disease."  *Id.*  In the October 2005 affidavit, Dr. Shames further said that plaintiff showed signs of decompensated liver disease *before* his September 2004 consult with Dr. Manning.  *Id.* ¶ 19.  Dr. Shames gave no explanation for his changed opinion.  Dr.

---

[11] While the CDOC has developed the HCV Protocol for the management of inmates with HCV, the Protocol probably does not afford Mr. Neely any constitutional rights.  *See e.g. Sandin v. Conner*, 515 U.S. 472, 487 (1995)(prison regulation did not give prisoner a liberty interest); *see also, Medina* v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001 (recognizing that claims based on violations of state law and police procedure are not actionable under § 1983)(internal citations omitted).

03-cv-00616-EWN-PAC
March 1, 2006

Shames also ignored the most recent (September 2005) examination Mr. Neely had

with internist Jay Richter, M.D. , who reported that Mr. Neely had "no evidence of

ascites"[12] and that "[f]rom a strict medical standpoint, he may still be a candidate for

treatment with interferon and ribavarin."  Exhibit 2 to plaintiff's November 7, 2005

response to the CDOC status report, at 2-3.  It is not clear from the incomplete medical

records presented whether Mr. Neely has, or has had, compensated or uncompensated

liver disease at any time since his KCCC incarceration in 2002.  It is undisputed that

Mr. Neely has not had a liver biopsy, the test which would conclusively determine the

condition of Mr. Neely's liver and therefore his eligibility for I/R treatment.

I recommend finding that Mr. Neely has produced enough evidence to create

material fact issues about whether and if so, when, he had compensated or

decompensated liver disease while he was at the KCCC facility and thereafter; whether

he met the Protocol's requirements for a liver biopsy and subsequent I/R treatment; and

whether Dr. Shames and other health care providers at KCCC and CDOC's FCF

prevented Mr. Neely from having a liver biopsy which was a prerequisite for I/R

treatment.[13]

_____

[12]Ascites is defined as the "abnormal accumulation of serous fluid in the spaces between tissues and organs in the cavity of the abdomen."  MERRIAM-WEBSTER MEDLINE PLUS (2005), available at http://mlm.nih.gov/medlineplus.  The CDOC Protocol at IV. B. 3(e) lists decompensated liver disease as a reason to exclude an inmate from treatment, listing signs which include: ascites, history of variceal bleeding, hepatic encaphalopathy, and abnormal liver function tests.  Plaintiff's PSJ, exhibit 2.

[13]The Protocol provides for I/R treatment if the biopsy shows at least mild liver inflammation (Stage 1 or greater) and fibrosis (Grade 2 or greater).  See Plaintiff's PSJ, Exhibit 2, at 14, Attachment A-1, §6.

03-cv-00616-EWN-PAC
March 1, 2006

<u>SA Classes</u>

Defendants also argue that Mr. Neely has been ineligible for treatment because he did not complete the substance abuse classes, which are prerequisites for consideration under the Protocol.  Protocol IV. B. 2. a(1)-(4), Plaintiff's PSJ exhibit 2, at 6-7.  Mr. Neely however, has produced evidence which has not been rebutted by the defendants, that he would have enrolled in classes at KCCC if they had been available, plaintiff's response to KCCC's SJ, exhibit 7; that he was transferred to another facility on the day he was to start the classes when they became available at KCCC,  plaintiff's response to KCCC's SJ, exhibits 8 and 1; that, as of December 2003, he had completed the substance abuse classes at the FCF, plaintiff's PSJ, exhibit 5; and that he thereafter completed AA meeting attendance requirements. See Plaintiff's August 23, 2005 supplemental affidavit.  Accordingly, I recommend finding that there are material fact issues about whether Mr. Neely complied with the substance abuse and AA class requirements for treatment under the Protocol or whether the defendants prevented him from attending those classes, and therefore that there are genuine fact issues about whether Mr. Neely has been   "incarcerated under conditions posing a substantial risk of serious harm," the objective component of the Eighth Amendment deliberate indifference test.

### 2. Subjective Component of Deliberate Indifference

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Farmer*, 511 U.S. at

16

03-cv-00616-EWN-PAC
March 1, 2006

834.  The subjective component is satisfied if the official "knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from

which the inference  can be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Id.* at 837.  Further, this component "should be

determined in light of the prison authorities' current attitudes and conduct." *Helling v.*

*McKinney*, 509 U.S. 25, 36 (1993). Deliberate indifference "entails something more

than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something

less than acts or omissions for the very purpose of causing harm or with knowledge

that harm will result." *Id.*  This consideration is not easy because the deliberate

indifference lies "somewhere between the poles of negligence at one end and purpose

or knowledge at the other." *Farmer*, 511 U.S. at 836.        An inmate may satisfy the

subjective component of the deliberate indifference test by showing that the

"defendant(s) knew of [the inmate's ] substantial risk of harm and disregarded that risk

by failing to take reasonable measures to abate it." *Hunt*, 199 F. 3d at 1224.

      Under the circumstances here, the court's function is to examine the conduct of

the prison medical professional "who serves 'solely . . . as a gatekeeper for other

medical personnel capable of treating the condition'" and one who "may be held liable

under the deliberate indifference standard if she 'delays or refuses to fulfill that

gatekeeper role.'" *Mata*, 427 F.3d at 751, quoting *Sealock*, 218 F.3d at 1211.

      The Protocol provides first for blood testing of inmates; if the results reach

certain levels, the inmates then are tested for genotype and HCV RNA.  Plaintiff's PSJ,

17

03-cv-00616-EWN-PAC
March 1, 2006

Ex. 2 at 8, 10.  A potential candidate for HCV I/R therapy is an inmate with positive

antibody and viral load with a documented elevation of serum ALT levels for at least six

months.  *Id.* at 5.    A liver biopsy to evaluate the stage and grade of liver disease is

required before I/R therapy may be ordered.  *Id.* at 9.  Mr. Neely has undergone the

blood tests for enzymes and genotype under the Protocol.  See November  7, 2005

response to the CDOC status report, at 7.   The tests include the quantitative HCV RNA

assay, serum ALT levels and genotype, which have shown that plaintiff is eligible to

move to the liver biopsy.  See *id.* and Plaintiff's PSJ, Ex. 2 at 8.

The medical care provider defendants maintain that plaintiff is receiving all the

care to which he is entitled.  The medical records demonstrate that CDOC

professionals are not ignoring Mr. Neely; he is receiving care, including medications,

for his *other* chronic conditions, including diabetes, hypothyroidism, hypertension, and

care for complications from the progression of liver disease as a result of cirrhosis and

HCV.  Notwithstanding, other medical records show that while prison medical staff were

aware that plaintiff had HCV and that his HCV was progressing, they  denied or

indefinitely postponed ordering the liver biopsy which Mr. Neely hopes will show that he

is a candidate for I/R therapy.

Mr. Neely has produced evidence, such as transferring him to another facility on

the day he was to begin substance abuse classes at KCCC, Dr. Shames' insistence

that Mr. Neely be compliant with his medications for six months, a requirement not even

found in the Protocol, and Dr. Shames' equivocating opinions about Mr. Neely's liver

18

03-cv-00616-EWN-PAC
March 1, 2006

condition thereby denying Mr. Neely a liver biopsy  which he needs in order to advance

to the next step for treatment of his HCV under the Protocol, which is crucial to an

analysis of the "gatekeeper's" role in ensuring evaluation or treatment that complies

with the Eighth Amendment.  Here, it is undisputed that the defendant medical care

providers knew of plaintiffs' HCV; and there are at least genuine questions about

whether some or all of the medical care provider defendants knew of plaintiff's blood

work which showed abnormally elevated liver enzymes and knew of the physician's

opinion that plaintiff should have a liver biopsy.  These are facts upon which a

reasonable fact finder may find that the CDOC and KCCC medical staff, knowing of Mr.

Neely's need for the liver biopsy as a prerequisite for I/R treatment, deliberately

ignored his need and denied him the liver biopsy.  I therefore  recommend finding that

Mr. Neely has produced enough evidence to allow a reasonable jury to find that the

medical care provider defendants deliberately denied Mr. Neely his need for a liver

biopsy.  Because the liver biopsy is necessary to determine whether I/R treatment is

warranted, I further recommend the same finding with respect to Mr. Neely's claim of

denial of I/R treatment.

         I further recommend finding that there is insufficient factual support for the

KCCC defendants' arguments that plaintiff rejected the substance abuse classes that

were made available to him and for the KCCC defendants' contention that plaintiff has

not suffered any injury.  I recommend that the CDOC and KCCC defendants'  motions

for summary judgment concerning whether plaintiff has stated an Eighth Amendment

03-cv-00616-EWN-PAC
March 1, 2006

claim be denied against the medical care provider defendants and that summary

judgment should not be granted against Mr. Neely on his claims for the injunctive

relief[14] of I/R treatment or evaluation for that treatment.

<u>Delay in Treatment</u>

Defendants next argue that Mr. Neely has not produced any evidence that a

delay, if any, in evaluating or treating him caused Mr. Neely any injury or harm or that

the KCCC defendants, in particular, caused him the alleged harm.

The PLRA, in pertinent part, provides that "no Federal civil action may be

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental

or emotional injury suffered while in custody without a prior showing of physical injury."

42 U.S.C. § 1997e(e); see also *Oxendine*, 241 F.3d at 1276 (Eighth Amendment

violation can be brought only where the plaintiff can show the delay resulted in

substantial harm).  The "substantial harm" requirement "may be satisfied by lifelong

handicap, permanent loss, or considerable pain." *Garrett*, 254 F.3d at 950.  Section

1997e(e) thus requires Mr. Neely to allege physical injury in order to sustain his claim

for "mental or emotional injury."

Here, Mr. Neely infers that his liver condition would not have deteriorated if he

had been treated earlier for HCV and that he has endured pain and suffering as a

result.  Plaintiff's primary claim is, however, for the injunctive relief of treatment for

---

[14]Plaintiff's request for treatment is a request for injunctive relief, which can only be brought against an entity or against a defendant in his "official" capacity.  An official capacity suit is a suit against the state or a state entity.  S*ee Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

03-cv-00616-EWN-PAC
March 1, 2006

HCV, and the Tenth Circuit has held that §1997e(e)'s physical injury limitation does not affect claims for injunctive relief. See *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999) ("§1997e(e) does not affect actions for declaratory or injunctive relief").

Here, I recommend finding that plaintiff has stated facts showing a denial, rather than a delay, in medical treatment, so that the PLRA, §1997e(e), is not applicable. I also recommend finding that the PLRA's physical injury requirement does not apply to Mr. Neely's claim for the injunctive relief of treatment. See *Perkins*, 165 F.3d at 808. I recommend denying the summary judgment motions directed to the physical harm requirement of the PLRA and to plaintiff's alleged failure to show causation.

I further recommend that plaintiff's motion for partial summary judgment be denied at this stage of the proceedings because to grant his motion would require the court to evaluate credibility, which cannot be done at this point. *Norton v. City of Marietta*, 432 F.3d 1145, 1154 (10th Cir. 2005)("a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment.")

C. *Qualified Immunity*

Both the CDOC and KCCC defendants next argue that, even if they violated plaintiff's Eighth Amendment rights, they are entitled to qualified immunity on claims against them in their individual capacities. Qualified immunity protects public officials from individual liability in a §1983 action unless the officials violated "clearly established . . . constitutional rights of which a reasonable person would have known."

21

03-cv-00616-EWN-PAC
March 1, 2006

*Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).

The Supreme Court has set forth a two-part test to determine whether an official

is entitled to qualified immunity.   "The threshold inquiry a court must undertake in a

qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a

constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v.

Katz*, 533 U.S. 194, 201 (2001)).   The plaintiff must articulate the clearly established

right and the defendant's conduct which violated the right.  *Mick v. Brewer*, 76 F.3d

1127, 1134 (10th Cir. 1996)(quotation omitted).   To be clearly established, the contours

of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.

1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

First, qualified immunity is not available as a defense against plaintiff's claims for

the injunctive relief of evaluation and treatment.  Such a claim may only be brought

against the medical care provider defendants in their official capacities.  See *Kentucky

v. Graham*, 473 U.S. 159 (1985) (official capacity suits are suits reviewing the state's

compliance with the United States Constitution).

Next, as has been previously discussed, plaintiff's right is the freedom from

deliberate indifference to his serious medical need for a liver biopsy, and if warranted

by the biopsy, to I/R treatment.  Defendants argue that the law has not been clearly

established.  I find no clearly established Tenth Circuit law or clearly established law

22

03-cv-00616-EWN-PAC
March 1, 2006

from a number of other circuits which hold that an Hepatitis C positive inmate, who,

otherwise qualified, has a clearly established right to a liver biopsy and further

treatment.  The question is whether the right Mr. Neely asserts has been clearly

established so that the medical care provider defendants would understand that their

actions violated plaintiff's right, thus precluding use of the qualified immunity defense.

In light of the muddled state of the evidence in this case, I find *Fenner v.*

*Suthers*,[15] 194 F.Supp.2d 1146, 1149-50 (D.Colo. 2002), a pre-Protocol decision of this

court, to be helpful.  There, the CDOC procedures for HCV treatment had not been set

out in a Protocol as they are now.  There, the Court, in denying qualified immunity,

reasoned that "[w]hile the question is not altogether free from doubt, I find that

defendants' failure to muster reliable facts concerning whether they have been

deliberately indifferent to plaintiff's serious medical needs infects, as well, their claim

that there was no clearly established right here."  The medical care provider defendants

here, also have not mustered reliable facts to rebut plaintiff's evidence that  (1) he

attempted to participate in substance abuse classes, but that the classes were not

made available to him at KCCC at a time when his liver disease was arguably not as

advanced; (2) that he was transferred for unspecified reasons to the  Fremont

Correctional Facility on the day he was to begin substance abuse classes at KCCC; (3)

that Mr. Neely has HCV, abnormal liver enzymes and a genotype that is suitable for I/R

---

[15]Fenner also was incarcerated at the Fremont Correctional Center.  See *Fenner* caption naming a nurse practitioner in the "Fremont Medical Department."   194 F. Supp. 2d at 1146.

03-cv-00616-EWN-PAC
March 1, 2006

therapy; (4) that the medical records concerning the stage or progression of Mr. Neely's

liver disease are inconsistent or are otherwise not verified by objective documentation;

(5) the reasons given for denying the liver biopsy are not consistent; and (6) the

sudden requirement of compliance with medications for other illnesses, unrelated to Mr.

Neely's HCV, has been added.  On this evidence, I recommend finding that the

deliberate denial of a liver biopsy, defendants' muddying of the facts, and  the

inconsistencies in the records taint defendants' claim to qualified immunity.  Indeed, as

the Court said in *Fenner*: "[i]t could be, for example, that there is a single course of

treatment for hepatitis C, that plaintiff manifestly met all conditions precedent for that

treatment, and that defendants nonetheless refused that treatment.  Defendants have

not negated such a scenario.  Were it true, a fact finder could readily infer that

defendants were, or should have been, aware that they were encroaching on a clearly-

established constitutional right..."  *Fenner*, 194 F. Supp.2d at 1149.

The record shows enough evidence for a fact finder to conclude that  the

medical care provider defendants knew that by delaying or depriving Mr. Neely of

evaluation or treatment for HCV, they were not responding to his serious medical

needs.  Because the prison medical staff decided to indefinitely postpone a liver

biopsy, despite a Protocol that described the virus and its complications if untreated,

and which required progressive evaluation and treatment, and because the medical

records at least suggest that Mr. Neely, if he has decompensated liver disease, may

not have progressed to that stage of deterioration if he had been evaluated and

24

03-cv-00616-EWN-PAC
March 1, 2006

treated, I recommend finding that Mr. Neely has presented enough evidence to raise genuine issues of material fact about whether the medical care provider defendants should be entitled to qualified immunity.

Finally, I address resolution of the related question of whether the KCCC defendants are entitled to raise the defense of qualified immunity.  I recommend finding, that, as employees of a privately-owned correctional services contract provider, the KCCC defendants may raise the defense of qualified immunity with regard to the Eighth Amendment claims.  *See Rosewood Servs., Inc. v. Sunflower Divers. Servs., Inc.*, 413 F.3d 1163, 1165-66 (10th Cir. 2005)(*quoting DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 723 (10th Cir. 1988) ("when private parties act pursuant to contractual duties and perform governmental functions, they can claim qualified immunity").

The KCCC health care provider defendants, have not, however, independently provided enough facts to negate my recommended finding that there are substantial fact issues about whether these defendants provided substance abuse classes to Mr. Neely as required by the CDOC Protocol,  and whether they participated in failing to make available medical evaluation or treatment as required by the Eighth Amendment. For those reasons and for the reasons stated with regard to the CDOC defendants, I recommend denial of qualified immunity to the KCCC defendants.

*D.  Summary Judgment on Remaining Claims and Parties in the Amended Complaint*

25

03-cv-00616-EWN-PAC
March 1, 2006

1. Eighth Amendment Claim Relating to Umbilical Hernia

The CDOC defendants moved for summary judgment on the Eighth Amendment claim relating to plaintiff's claim of inadequate medical treatment of his umbilical hernia. Plaintiff did not respond to that aspect of the CDOC's motion. Accordingly, I recommend finding that part of the motion confessed and that summary judgment should enter on plaintiff's Eighth Amendment umbilical hernia claim.

2. Lack of Personal Participation -Watkins, Masterson, Blake and Executive Director

Personal participation is an essential allegation in a civil rights action. See *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996). A defendant cannot be held liable under §1983 solely because he is in charge of a correctional officer who committed the alleged constitutional violation. *See Jenkins*, 81 F.3d at 994. A plaintiff must state facts to show an affirmative link between the alleged constitutional violation and the defendant's "personal participation, his exercise of control or direction, or his failure to supervise." *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)(internal quotation omitted).

Here, plaintiff has not alleged any particular claims against defendant FCF warden Watkins or FCF assistant warden Masterson, and their status as CDOC facility wardens does not, without more, demonstrate any personal participation in the alleged constitutional violations. Defendants Watkins and Masterson should be dismissed.

26

03-cv-00616-EWN-PAC
March 1, 2006

Similarly, plaintiff has failed to state any facts to show personal participation on the part of defendant Blake, identified as plaintiff's case manager, and the unidentified CCA Executive Director.  Each is entitled to judgment in his favor on those of plaintiff's claims which could be construed as having been brought against him.

3. State Law Tort Claims

Plaintiff has alleged state law tort claims for: intentional infliction of emotional distress against McGarry, Hill, Wederski, Bloor, Rand, Bair, Fuchs, Blake and Barber; negligence against McGarry, Bloor, Brill, Bair, Hill, Barber, Rand, Fuchs, Blake, Wederski, Watkins, Creany and Masterson; and medical malpractice against McGarry, Bloor, Rand, Hill, Wederski, Barber, Creany and Masterson.  The CDOC defendants move for summary judgment on all state claims against defendants in their official capacities because such claims are barred by the Eleventh Amendment.

The Eleventh Amendment  forecloses suits "alleging a state official violated state law in carrying out their official duties."  *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 64 (1989) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).  The Eleventh Amendment generally bars suits in federal court against state entities considered arms of the state. See *Edelman v. Jordan*, 415 U.S. 651, 663-64 (1974); *Unified Sch. Dist. No. 480 v. Epperson*, 583 F.2d 1118, 1121 (10th Cir. 1978). Moreover, the Supreme Court has held that neither states nor state officers sued in their official capacities are "persons" [capable of being sued] within the meaning of 42 U.S.C. § 1983.  *Will*,  491 U.S. at 71.

27

03-cv-00616-EWN-PAC
March 1, 2006

Plaintiff's claims here are for injunctive relief and for money damages. As such, his state tort claims against the defendant entities and officials in their official capacities are barred. *Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1234 (10th Cir 2003). All state tort claims against any defendant in his official capacity should be dismissed, including those state law tort claims brought against the KCCC defendants.

Defendants also move for summary judgment on plaintiff's state law claims asserted against them in their individual capacities, on the ground that such claims are barred under the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-118(2)(a) C.R.S.2005. Under the CGIA, public employees, such as defendants, are entitled to immunity unless their conduct is willful and wanton. See *Mattson v. Harrison*, 929 P.2d 41 (Colo.App.1996) (public employee granted immunity for acts or omissions occurring during performance of employee's duties, unless employee's act or omission was willful and wanton). While a defendant has the burden of proving the affirmative defense of governmental immunity, to overcome the immunity, the plaintiff must prove that the defendant's action was willful and wanton. *Duong v. County of Arapahoe*, 837 P.2d 226 (Colo.App.1992)(dismissal of tort claims on basis of sovereign immunity proper because plaintiffs presented no evidence of willful and wanton conduct).

Here, plaintiff has asserted that the defendants' failure to comply with the HCV Protocol is evidence of willful and wanton conduct. I disagree. "Willful and wanton"

28

03-cv-00616-EWN-PAC
March 1, 2006

conduct involves actions that are done "heedlessly and recklessly, without regard to the consequences, or the rights or safety of others." *See Moody v. Ungerer*, 885 P.2d 200, 205 (Colo.1994)(internal citation omitted).  Plaintiff's conclusory allegations of willful and wanton conduct do not rise to the required level, so that I recommend that judgment should be entered in favor of defendants on all state law claims brought against them in their individual capacities.

4. Due Process Claims

Plaintiff claims that defendants Brill, Bair, Fuchs, Blake, Barber, Wederski and Hill violated his First and Fourteenth Amendment rights by, among other actions, failing to accept  grievances.  State prisoners enjoy a constitutional right of adequate, effective, and meaningful access to the courts which is grounded in the First and Fourteenth Amendment right to petition the government for redress of grievances and in the Fourteenth Amendment Due Process Clause.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citation omitted); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).  A prisoner asserting an infringement of his constitutional right of access must demonstrate an actual injury to his ability to pursue a non-frivolous legal claim.  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999).  Plaintiff has not made any showing to substantiate an inability to pursue a non-frivolous legal claim because of any defendant's actions to support his claims under the First and Fourteenth Amendments, and therefore I recommend the entry of summary judgment in favor of all defendants named in those claims.

29

03-cv-00616-EWN-PAC
March 1, 2006

    5.  Other Defendants

    The status of any other claims remaining against defendants Bair, Barber, Blake and Rand is uncertain.  They answered plaintiff's amended complaint, see Doc. #112, but did not file dispositive motions.   At the motions hearing on August 30, 2005, plaintiff's counsel appeared to agree that Bair, Barber, Blake and Rand should be dismissed, but counsel did not file a motion to dismiss them.  I can only conclude that any claims plaintiff stated against them should remain pending.

IV. Recommendations

    For the reasons stated, it is hereby

    **RECOMMENDED** that plaintiff's Motion for Partial Summary Judgment, filed April 15, 2005 [doc. # 233] be **denied**.  It is further

    **RECOMMENDED** that the Colorado Department of Corrections defendants McGarry, Bloor, Creany, Watkins and Masterson's (CDOC defendants) Motion for Summary Judgment filed May 23, 2005 [doc. # 235] **be granted only as to (1) plaintiff's state law tort claims and (2) lack of personal participation by Watkins and Masterson; and otherwise <u>denied</u>**.  It is **further**

    **RECOMMENDED** that the Kit Carson Correctional Center defendants Brill, Fuchs, Wederski and Hill's (KCCC defendants) Motion for Partial Summary Judgment, filed May 23, 2005 [doc. # 237] **be granted only as to (1) plaintiff's state law tort claims and (2) lack of personal participation by defendants Fuchs and Brill; and otherwise <u>denied</u>.  It is further**

30

03-cv-00616-EWN-PAC
March 1, 2006

**RECOMMENDED that** summary judgment *sua sponte* enter in favor of defendants Brill, Bair, Fuchs, Blake, Barber, Wederski and Hill, on plaintiff's claim that those defendants violated his First and Fourteenth Amendment rights; It is **further**

**RECOMMENDED** that defendants **Watkins, Masterson, Fuchs, Wederski,** and **Brill** be **dismissed**.  It is further

**RECOMMENDED** that all of plaintiff's **state law claims** against any defendant in his or her official or individual capacity be **dismissed**.  It is further

**RECOMMENDED** that all claims against the unidentified Executive Director, CCA, be **dismissed *sua sponte*** because this defendant has never been identified and because plaintiff has not stated any claim of his or her personal participation.  It is further

**RECOMMENDED** that defendant **Blake** be dismissed for plaintiff's failure to state any claims against him.  It is further

**RECOMMENDED** that plaintiff be ordered to amend his complaint if this recommendation is upheld to set forth only the following **RECOMMENDED** remaining claims and parties:

Eighth Amendment deliberate indifference claims against defendants Dr. McGarry (former CMO of the CDOC), Dr. Creany (CDOC), Dr. Bloor (CDOC), and defendant Hill (KCCC); and

03-cv-00616-EWN-PAC
March 1, 2006

any remaining claims against defendants Bair, Barber, and Rand.[16]

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district court judge shall make a determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated this 1st day of March 2006.

BY THE COURT:
s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge

---

[16]Or, in the alternative, plaintiff should move to dismiss these defendants.

32