IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–00616–EWN–PAC

ROBERT A. NEELY,

      Plaintiff,

v.

(C.D.O.C.) - McGARRY,
(C.D.O.C.) - BLOOR,
(C.C.A.) - C.C.A. EXECUTIVE DIRECTOR,
(K.C.C.C.) - BRILL,
(K.C.C.C.) - BAIR,
(K.C.C.C.) - FUCHS,
(K.C.C.C.) - BLAKE,
(K.C.C.C.) - WEDERSKI,
(K.C.C.C.) - HILL,
(K.C.C.C.) - BARBER,
(K.C.C.C.) - RAND,
(F.C.F.) - WATKINS,
(F.C.F.) - CREANY, and
(F.C.F.) - MASTERSON,

      Defendants.

---

## ORDER CONCERNING MAGISTRATE JUDGE'S RECOMMENDATION

---

      This is a civil rights case arising under 42 U.S.C. § 1983.  Plaintiff Robert Neely, an

inmate in the custody of the Colorado Department of Corrections ("CDOC"), alleges that

Defendants McGarry, Bloor, Creany, Watkins, and Masterson (the "CDOC Defendants"); Brill,

Fuchs, Wederski, and Hill (the "KCCC Defendants"); and Bair, Rand, Blake, Barber, and the

C.C.A. Executive Director (collectively, "Defendants") violated section 1983 when they deprived

him of his rights: (1) to be free of cruel and unusual punishment guaranteed by the Eighth

Amendment to the United States Constitution by failing to provide him with medical treatment for

a hepatitis C; and (2) to due process guaranteed by the First and Fourteenth Amendments to the

United States Constitution by interfering with his grievances.  Plaintiff also asserts that

Defendants violated several state laws.  Plaintiff seeks compensatory, nominal, and punitive

monetary damages as well as injunctive relief under 42 U.S.C. § 1983 ("section 1983") and

various Colorado state laws.

Pursuant to 28 U.S.C. section 636(b)(1)(A) and United States District Court for the

District of Colorado Rule 72.1, I referred the matter to Magistrate Judge Patricia A. Coan for

pretrial case management and to make recommendations on dispositive motions.  (General Order

of Reference to United States Magistrate Judge [Including Dispositive Motions] [filed May 29,

2003].)  On March 2, 2006, Magistrate Judge Coan filed her recommendation on the following

motions, all of which were filed on April 15, 2005: (1) "Plaintiff's Motion for Partial Summary

Judgment," (2) "KCCC Defendants' Motion for Summary Judgement [sic] with Authorities," and

(3) "CDOC Defendants' Motion for Summary Judgment."  (Recommendation of United States

Magistrate Judge [filed March 2, 2006] [hereinafter "Recommendation"].)  This matter is before

the court on: (1) CDOC "Defendants' McGarry, Bloor and Creany's Objections to

Recommendation of United States Magistrate Judge," filed March 16, 2006; and (2) KCCC

Defendants' "Objection to Recommendation of United States Magistrate Judge from KCCC

Defendants," filed March 17, 2006.  Jurisdiction is premised upon 28 U.S.C. §§ 1343 and 1367

(2006), civil rights original jurisdiction and supplemental jurisdiction, respectively.

## FACTS

### 1.    Factual Background

The facts of this case are set out in detail in the magistrate judge's March 6, 2006

recommendation.  (Recommendation at 2–7.)  Familiarity therewith is thus assumed.  I briefly

address the facts relevant to Plaintiff's motion.

Plaintiff, an inmate in the custody of the CDOC, suffers from hepatitis C.  (KCCC Defs.'

Mot. for Summ. J. with Authorities, Statement of Undisputed Material Facts ¶¶ 1, 8 [filed April

15, 2005] [hereinafter "KCCC Br."]; *deemed admitted at* Pl.'s Resp. in Opp'n to KCCC Defs.'

Mot. for Summ. J. with Authorities [filed May 23, 2005] [hereinafter "Pl.'s KCCC Resp."].)[1]  At

the time of the incidents that give rise to this action, KCCC Defendants Brill, Fuchs, Wederski,

---

[1]Pursuant to my practice standards:

[a]ny party opposing the motion for summary judgment shall, in a section of the brief . . . styled "Response to Statement of Undisputed Facts," admit or deny the asserted material facts set forth by the movant.  The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering.  Any denial shall be accompanied by a brief factual explanation of the reasons for the denial and a specific reference to material in the record supporting the denial.

(*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 4.)  In plain contravention of my rules, Plaintiff does not respond to KCCC Defendants' proffered facts, but instead presents an unrelated set of new and different facts in a section styled "Facts."  (Pl.'s KCCC Resp., Facts ¶¶ 4–13.)  Faced with Plaintiff's patent noncompliance, I deem admitted those facts proffered by KCCC Defendants which are properly substantiated by record evidence.  It should go without saying that the parties are expected to follow these standards and that, when they fail, the magistrate judge is expected to enforce the standards.

and Hill were, respectively, the warden, a grievance officer, a medical administrator, and the head nurse at the Kit Carson Correctional Center ("KCCC").  (*Id.*, Statement of Undisputed Material Facts ¶¶ 2–7; *deemed admitted at* Pl.'s KCCC Resp.; *see also* (Prisoner Compl. at 56 [filed Dec. 23, 2003] [hereinafter "Am. Compl."].)  KCCC Defendants were all employees of a private prison management company that contracted with the CDOC to manage the KCCC facility.  (Pl.'s KCCC Resp., Facts ¶ 13; *admitted at* KCCC Defs.' Reply in Supp. of Mot. for Summ. J. with Authorities, Reply Concerning Undisputed Material Facts ¶ 13 [filed June 13, 2005] [hereinafter "KCCC Reply"].)  CDOC Defendants: (1) McGarry and Bloor were, respectively, the chief medical officer and a hepatologist with the CDOC; and (2) Watkins, Creany, and Masterson were, respectively, the warden, a physician, and a medical administrator at the Fremont Correctional Facility.  (Am. Compl. at 56.)  Of the remaining Defendants, Defendant: (1) Blake was a KCCC case worker; (2) Bair was the KCCC programs director; (3) Rand was a physician at KCCC; and (4) Barber was a KCCC pharmacy nurse.[2]  (*Id.*)  Finally, the unidentified Defendant C.C.A. Executive Director was eponymously named as a party.

From September 2002 through July 2003, Plaintiff was incarcerated at KCCC.  (*Id.*, Statement of Undisputed Material Facts ¶ 7; *deemed admitted at* Pl.'s KCCC Resp.)  During the period of his incarceration at KCCC, Plaintiff requested hepatitis C treatment, including

---

[2]Defendants Bair, Rand, Blake, and Barber answered Plaintiff's amended complaint, but were not party to KCCC Defendants' motion for summary judgment or KCCC Defendants' response to Plaintiff's motion for partial summary judgment.  (Answer to Pl's Am. Compl. and Jury Demand from KCCC Defs. [filed Jan 14, 2004]; KCCC Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. [filed May 23, 2005]; KCCC Br.)

Interferon/Rivibarin drug therapy ("Interferon therapy").  (*Id.*, Statement of Undisputed Material

Facts ¶ 9; *deemed admitted at* Pl.'s KCCC Resp.; *see also* Am. Compl. at 55.)  KCCC maintains

and follows a certain policy promulgated by the CDOC (the "Policy") outlining requirements that

inmates must meet in order to be eligible for hepatitis C treatment, including Interferon therapy.

(*Id.*, Statement of Undisputed Facts ¶ 10; *deemed admitted at* Pl.'s KCCC Resp.)  These

requirements include, *inter alia*, that inmates: (1) sign a contract agreeing to attend, enroll in, and

attend a substance abuse program, comprising an addiction recovery class and "aftercare

programs" such as Alcoholics Anonymous or Narcotics Anonymous, for six months prior to

beginning treatment; (2) continue attending the substance abuse program during treatment; (3)

undergo a liver biopsy after completing the substance abuse program, in order to assess liver

damage and determine whether Interferon therapy is appropriate; and (4) consent to random urine

tests for alcohol, illegal drugs, and nicotine at least four times per year during the pre-treatment

and treatments periods.[3]  (*Id.*, Statement of Undisputed Facts ¶¶ 10–11, Ex. A–2 at 6–7, 9

[Clinical Standard and Procedure for Healthcare Providers – 2004 Revision]; *deemed admitted at*

Pl.'s KCCC Resp.)

     Further, the Policy requires that upon an inmate's execution of the aforementioned

contract, the medical provider must provide a written referral for inmates' enrollment in a

---

[3]I note that none of the parties presents the version of the Policy in place during Plaintiff's
incarceration.  (KCCC Br., Ex. A–2 [Clinical Standard and Procedure for Healthcare Providers –
2004 Revision]; Pl.'s Mem. Br. in Supp. of Mot. for Summ. J., Ex. 2 [Clinical Standard and
Procedure for Healthcare Providers – 2004 Revision] [filed Apr. 15, 2005].)  None of the parties
contests reference to the later version.

qualifying substance abuse program within fourteen days, and not longer than twenty-four days. (*Id.*, Ex. A–2 at 6–7, 14 [Clinical Standard and Procedure for Healthcare Providers – 2004 Revision]; *see also* Pl.'s KCCC Resp., Facts ¶ 4; *admitted at* KCCC Reply, Reply Concerning Undisputed Material Facts ¶ 4.)  Pursuant to the Policy, if a substance abuse program is not available at the facility in which the inmate is incarcerated, the CDOC will transfer the inmate to a facility that offers the required program within sixty days of the written referral.  (KCCC Br., Ex. A–2 at 6–7, 14 [Clinical Standard and Procedure for Healthcare Providers – 2004 Revision]; *see also* Pl.'s KCCC Resp., Facts ¶ 5; *admitted at* KCCC Reply, Reply Concerning Undisputed Material Facts ¶ 5.)  During Plaintiff's incarceration at KCCC from September 5, 2002 through July 8, 2003, the Policy-required substance abuse program classes were not available to Plaintiff. (Pl.'s KCCC Resp., Facts ¶ 7; *admitted at* KCCC Reply ¶ 7.)  Plaintiff filed several grievances, decrying his inability to attend the program.  (*Id.*, Facts ¶ 8, Ex. 3 [11/13/02 Grievance], Ex. 5 [12/25/02 Grievance]; *admitted at* KCCC Reply ¶ 8.)

On July 8, 2003, Plaintiff was transferred to the Fremont Correctional Facility, where he remained incarcerated through November 2, 2004.  (CDOC Defs.' Mot. for Summ. J., CDOC Defs.' Br. in Supp. of their Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 2 [filed April 15, 2005] [hereinafter "CDOC Br."]; *deemed admitted at* Pl.'s Resp. in Opp'n to CDOC Defs.' Mot. for Summ. J. [filed May 23, 2005] [hereinafter "Pl.'s CDOC Resp."]; *see also* Pl.'s CDOC Resp., Facts ¶ 1, Ex. 1 [Query Movements].)[4]  On December 8, 2003, Plaintiff completed

---

[4] Plaintiff is consistent in his insouciance.  Just as he did in his response to KCCC Defendants' motion, Plaintiff flouts my practice standards in his response to CDOC Defendants'

the addiction recovery class required under the Policy.  (CDOC Br., Statement of Undisputed

Material Facts ¶ 13; *deemed admitted at* Pl.'s CDOC Resp.)  On November 2, 2004, Plaintiff was

transferred to KCCC, where he remained incarcerated through March 15, 2005.  (Pl.'s CDOC

Resp., Facts ¶ 2, Ex. 1 [Query Movements].)

On March 15, 2005, Plaintiff was transferred back to the Fremont Correctional Facility,

where he remains at the present.  (*Id.*, Facts ¶ 2, Ex. 1 [Query Movements].)  As of April 15,

2005, Plaintiff had not yet completed the Alcoholics Anonymous program required as part of the

substance abuse program under the Policy.  (CDOC Br., Statement of Undisputed Material Facts

¶¶ 14–17, Ex. A–1 ¶ 11 [Aff. of Cary Shames, D.O.].)

## 2.   *Procedural History*[5]

### a.   *Plaintiff's Initial Complaint and Motion for Preliminary Injunction*

On April 9, 2003, Plaintiff commenced this action by filing a *pro se* complaint in which he

asserted eight claims against Defendants, each in their individual and official capacities.  (Prisoner

Compl. [filed Apr. 9, 2003].)   Plaintiff asserted claims under section 1983 for: (1) violations of

his rights to due process under the First and Fourteenth Amendments by denial and delay of

Plaintiff's grievance process and retaliation against Plaintiff for his grievance actions; and (2)

violations of his Eighth Amendment right to be free from cruel and unusual punishment by denial

---

motion by listing new and unrelated facts rather than responding to CDOC Defendants' properly
proffered factual assertions.  (Pl.'s CDOC Resp., Facts ¶¶ 1–39.)  Again, I deem admitted those
of CDOC Defendants' proffered facts which are properly substantiated.

[5]Two named defendants, Ortiz and DeCesaro, have been dismissed from this case.  In the
interest of clarity, I do not discuss those parties in this section of my analysis.

and delay of medical treatment. (*Id.*) Plaintiff also asserted state law claims for medical malpractice, negligence, and intentional infliction of emotional distress. (*Id.*) On December 23, 2003, Plaintiff amended his complaint: (1) to supplement his factual allegations; (2) to add certain parties as defendants; (3) to recharacterize his claims for denial of due process as arising under the First and Fourteenth Amendments conjointly; and (4) to increase the amount of compensatory damages sought and pray for nominal damages. (Am. Compl.)

Concurrently with his initial complaint, Plaintiff filed a motion for a temporary restraining order and preliminary injunction for Defendants to transfer Plaintiff to a medical facility. (Pls.' [sic] Mot. for Prelim. Inj. and TRO [filed April 9, 2003].) On September 5, 2003, KCCC Defendants filed a response, in which they argued that Plaintiff's motion was moot because Plaintiff was no longer incarcerated within their facility. (Resp. to Pl.'s Mot. for  TRO and Prelim. Inj. [filed Sep. 5, 2003].) On February 23, 2004, Magistrate Judge Coan recommended that this court deny Plaintiff's motion for a temporary restraining order and preliminary injunction. (Recommendation.) On April 14, 2004, due to a lack of evidence to support Plaintiff's medical condition or irreparable injury, I rejected the magistrate judge's recommendation and recommitted Plaintiff's motion for further consideration. (Order Concerning Magistrate Judge's Recommendations [filed Apr. 14, 2004].) On June 21, 2004 Plaintiff filed a second motion for a temporary restraining order and preliminary injunction for Defendants to provide him with medical treatment. (Pl.'s Mot. for Prelim. Inj. [filed June 21, 2004].) On September 1, 2004, Magistrate Judge Coan recommended that this court deny Plaintiff's motion. (Order and Recommendation of United States Magistrate Judge [filed Sep. 1, 2004].) On September 28,

2004, I accepted the magistrate judge's recommendation and denied Plaintiff's motion.  (Order

Accepting Magistrate Judge's Recommendation [filed Sep. 28, 2004].)

> ### b.      Plaintiff's Initial Motion for Summary Judgment

On February 17, 2004, Plaintiff, *pro se*, filed a two-page motion for summary judgment, in

which he made no reference to the relevant facts or law in the instant case.  (Mot. for Summ. J.

[filed Feb. 17, 2004].)  On the same date, KCCC Defendants filed a response to Plaintiff's motion.

(KCCC Defs.' Resp. to Pl.'s Mot. for Summ. J. [filed Feb. 17, 2004].)  On February 24, 2004,

Magistrate Judge Coan recommended that this court deny Plaintiff's motion for summary

judgment due to its aforementioned lack of legal and factual analysis.  (Recommendation of

United States Magistrate Judge [filed Feb. 24, 2004].)  On April 14, 2004, I accepted the

magistrate judge's recommendation and denied Plaintiff's motion for summary judgment.  (Order

Concerning Magistrate Judge's Recommendations [filed Apr. 14, 2004].)

> ### c.      Parties' Motions for Summary Judgment Presently Before the Court

On April 15, 2005, CDOC Defendants filed a motion for summary judgment.  (CDOC Br.)

CDOC Defendants argue they are entitled to summary judgment because: (1) the Eleventh

Amendment and the Colorado Governmental Immunity Act ("CGIA"), Colorado Revised Statutes

section 24–10–118(2)(a) (2006), bar Plaintiff's state law claims; (2) CDOC Defendants did not

personally participate in Plaintiff's medical treatment, and thus cannot be individually liable; (3)

Plaintiff cannot support his deliberate indifference claim; and (4) CDOC Defendants are entitled to

qualified immunity.  (*Id.*)  On May 23, 2005, Plaintiff, through counsel, filed a response to CDOC

Defendants' motion, in which he failed to respond to CDOC Defendants' proffered statement of

facts, wholly ignoring my practice standards.[6]  (Pl.'s CDOC Resp.)  CDOC Defendants did not

file a reply brief in support of their motion.

On April 15, 2005, KCCC Defendants filed a motion for summary judgment.  (KCCC Br.)

KCCC Defendants argue they are entitled to summary judgment because: (1) Plaintiff cannot

establish deliberate indifference because he was not eligible to receive treatment subject to the

CDOC treatment protocol; (2) Plaintiff's claims are barred by the Prison Litigation Reform Act

("PLRA") because he did not suffer any physical injury during his incarceration at KCCC; (3) no

causal link exists between KCCC Defendants' actions and Plaintiff's alleged injuries; (4) KCCC

Defendants are not individually liable because they did not personally participate in creating

Plaintiff's alleged harm; and (5) KCCC Defendants are entitled to qualified immunity.  (*Id.*)  On

May 23, 2005, Plaintiff, through counsel, filed a response to KCCC Defendants' motion, again

flouting my practice standards by failing to respond to KCCC Defendants' proffered statement of

facts.  (Pl.'s KCCC Resp.)  On June 13, 2005, KCCC Defendants filed a reply brief in support of

their motion.  (KCCC Reply.)

On April 15, 2005, Plaintiff, through counsel, filed a motion for partial summary

judgment.  (Pl.'s Mot. for Partial Summ. J., Pl.'s Mem. Br. in Supp. of Mot. for Partial Summ. J.

[filed Apr. 15, 2005] [hereinafter "Pl.'s Br."].)  In substance, Plaintiff argues that he is entitled to

partial summary judgment because: (1) he satisfies the criteria to receive Interferon therapy; (2)

---

[6]On November 5, 2004, Plaintiff became represented by counsel.  (Entry of Appearance
[filed Nov. 5, 2004].)  Plaintiff has maintained representation since that date.  (Recommendation
at 1.)

Defendants failed to provide Plaintiff with Interferon therapy; and (3) Defendants' failure to provide Interferon therapy constitutes deliberate indifference to his medical needs.  (*Id*.)  In form, Plaintiff wholly disregards my practice standards in filing his motion for partial summary judgment.  My practice standards provide that:

> [i]n a section of the brief required by rule 56.1A of the United States District Court for the District of Colorado Local Rules of Practice (Civil) styled "Statement of Undisputed Material Facts," the movant shall set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law.

(Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 1.)  Rather than the required numbered statement, Plaintiff proffered an eight-page narrative statement of facts.  (Pl.'s Br. at 3–10.)  On May 23, 2005, CDOC Defendants and KCCC Defendants filed separate responses to Plaintiff's motion.  (CDOC Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. [filed May 23, 2005] [hereinafter "CDOC Resp."]; KCCC Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. [filed May 23, 2005] [hereinafter "KCCC Resp."].)  Both sets of Defendants noted Plaintiff's failure to comply with my practice standards, but neither moved to strike Plaintiff's brief.  KCCC Defendants did not address Plaintiff's proffered facts, while CDOC Defendants attempted to assign numbers to Plaintiff's proffered narrative paragraphs.  (KCCC Resp., Reply Concerning Undisputed Material Facts; CDOC Resp., Resp. to Statement of Undisputed Material Facts.)  On June 13, 2005, Plaintiff concurrently filed replies to KCCC Defendants' and CDOC Defendants' responses in support of his motion, in which Plaintiff made an abysmally insufficient attempt to come into compliance with my practice standards by

discriminating between disputed and undisputed facts while refusing to admit or deny KCCC

Defendants' and CDOC Defendants' proffered facts.[7]  (Reply to KCCC Defs.' Resp. to Pl.'s Mot.

for Partial Summ. J. [filed June 13, 2005]; Reply to CDOC Defs.' Resp. to Pl.'s Mot. for Partial

Summ. J. [filed June 13, 2005].)  My practice standards also provide that "[f]ailure to follow

these procedures will result in an order striking the brief.  The court may require the brief to be

submitted, and/or it may rule against the party submitting the defective brief."  (Practice

Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 8.)

Plaintiff's brief is stricken for failure to follow my practice standards, and I do not discuss his

motion for partial summary judgment further.

> ### d.        The Magistrate Judge's Recommendations and Defendants' Objections Thereto

On March 2, 2006, the magistrate judge issued her recommendation on Plaintiff's motion

for partial summary judgment and KCCC Defendants' and CDOC Defendants' motions for

summary judgment.  (Recommendation.)  The magistrate judge recommended denying Plaintiff's

motion and granting in part and denying in part KCCC Defendants' and CDOC Defendants'

motions.  (Id.)  Specifically, the magistrate judge recommended denying Plaintiff's motion

because analyzing the motion would require an impermissible evaluation of credibility.  (Id. at 21.)

---

[7]Plaintiff's failure to comport with my practice standards in submitting his own motion is
not surprising, given his noncompliance in his opposition briefs to KCCC Defendants' and CDOC
Defendants' motions for summary judgment.  What is surprising is that when faced with
Defendants' responses pointing out his noncompliance, Plaintiff did not move to amend his
submissions.  Still more surprising is the magistrate judge's failure to enforce my practice
standards and strike Plaintiff's submissions.  I do not subscribe to the popular adage that rules are
made to be broken.  The overt lassitude shown in the application and administration of my
practice standards is disturbing.

The magistrate judge recommended granting CDOC Defendants' motion and KCCC Defendants' motion as to: (1) Plaintiff's state law claims against CDOC Defendants and KCCC Defendants; and (2) lack of personal participation by Defendants Watkins, Masterson, Fuchs, and Brill.  (*Id.* at 26–31.)  The magistrate judge recommended denying CDOC Defendants' and KCCC Defendants' motions with respect to Plaintiff's Eighth Amendment claim as to qualified immunity because: (1) Plaintiff met his burden to raise a genuine issue of material fact that the KCCC Defendants and CDOC Defendants who provided medical care to Plaintiff were deliberately indifferent to his medical needs; and (2) although the right to a liver biopsy is not clearly established, the record is sufficient to establish that the medical care providers among KCCC Defendants and CDOC Defendants knew or should have known that they were not responding to Plaintiff's serious medical needs.  (*Id.* at 21–26.)

Additionally, the magistrate judge recommended dismissal of Plaintiff's first, second, and third claims arising under state law as against all Defendants in their individual and official capacities.  (*Id.* at 27–29, 31.)  Relying on the Supreme Court's holding in *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989), that state officers in their official capacities are not "persons" subject to suit under section 1983, the magistrate judge reasoned that the Eleventh Amendment's proscription against "alleging [] state official[s] violated state law in carrying out their official duties" bars Plaintiff's claims against Defendants in their official capacities.  (Recommendation at 27.)   The magistrate judge reasoned further that under the CGIA, public employees are entitled to immunity in their individual capacity unless their conduct is willful and wanton.  (*Id.* at 28.)  The magistrate judge underscored Plaintiff's failure to prove

Defendant's willful and wanton conduct other than with conclusory allegations. (*Id.* at 28–29.) The magistrate judge reasoned that due to the absence of willful and wanton conduct, the CGIA barred Plaintiff's state law claims against Defendants in their individual capacities. (*Id.*)

The magistrate judge recommended that summary judgment enter *sua sponte* in favor of Defendants Brill, Bair, Fuchs, Blake, Barber, Wederski, and Hill on Plaintiff's fourth and fifth claims for violations of his First and Fourteenth Amendment rights to due process by interfering with his process of filing inmate grievances. (*Id.* at 30–31.) Citing the Tenth Circuit's holding in *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990), the magistrate judge noted that the First and Fourteenth Amendments provide for prisoners to have adequate, effective, and meaningful access to the courts. (Recommendation at 29.) The magistrate judge emphasized that pursuant to the Supreme Court's holding in *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996) and the Tenth Circuit's holding in *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir 1999), a prisoner asserting an infringement of his constitutional right of access must demonstrate an actual injury to his ability to pursue a non-frivolous legal claim. (Recommendation at 29.) The magistrate judge reasoned that because Plaintiff's amended complaint did not demonstrate Plaintiff's inability to pursue a non-frivolous legal claim, Defendants Brill, Bair, Fuchs, Blake, Barber, Wederski, and Hill ought be entitled to summary judgment on Plaintiff's claims under the First and Fourteenth Amendments.[8] (*Id.*)

---

[8]I note that a district court may dismiss *sua sponte* a *pro se* complaint for failure to state a claim where, as here, "it is 'patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [him] an opportunity to amend [his] complaint would be futile.'" *Whitney v. N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997) (quoting *McKinney v. Okla.*, 925 F.2d 363, 365

The magistrate judge recommended dismissal of Defendants Watkins, Masterson, Fuchs, Wederski, and Brill for lack of personal participation. (*Id.* at 18, 31.) The magistrate judge also recommended dismissal of: (1) Defendant Blake for Plaintiff's failure to state a claim against him; and (2) Defendant C.C.A. Executive Director for Plaintiff's failure to identify and state a claim against this party. (*Id.* at 31.) Finally, the magistrate judge recommended that Plaintiff be ordered to amend his complaint to reflect the remaining claims and parties. (*Id.* at 31–32.)

On March 16, 2006, Defendants McGarry, Bloor, and Creany filed an objection to the magistrate judge's recommendations. (Defs.' McGarry, Bloor and Creany's Objs. to Recommendation of United States Magistrate Judge [filed Mar. 16, 2006] [hereinafter "CDOC Obj."]) Defendants McGarry, Bloor, and Creany argue that they: (1) should be dismissed as parties because Defendants McGarry and Bloor no longer work for the CDOC and Defendant Creany is not the chief medical officer; (2) are entitled to summary judgment on Plaintiff's Eighth Amendment claim against them because of their lack of personal participation; (3) are entitled to summary judgment because Plaintiff fails to state a claim that they were indifferent to Plaintiff's medical treatment needs; and (4) are entitled to qualified immunity. (*Id.*)

On March 17, 2006, KCCC Defendants filed an objection to the magistrate judge's recommendations. (Obj. to Recommendation of United States Magistrate Judge from KCCC Defs. [filed Mar. 17, 2006] [hereinafter "KCCC Obj."].) KCCC Defendants argue that Defendant Hill ought be dismissed from the case because Plaintiff cannot demonstrate that he sustained a

---

[10th Cir. 1991]).

physical injury while incarcerated at KCCC and thus cannot satisfy the PLRA or the causation requirement for a deliberate indifference claim under section 1983. (*Id.*)

### e.    May 2006 Status Reports

On May 1, 2006, Defendants McGarry, Bloor, and Creany submitted a status report on Plaintiff's location and medical treatment for hepatitis C. (Status Report [filed May 1, 2006].) According to the report, after undergoing a biopsy and receiving treatment for anemia, Plaintiff received a prescription for Interferon treatment. (*Id.*) On May 31, 2006, Defendants McGarry, Bloor, and Creany submitted another status report, reflecting Plaintiff's progression with and tolerance of Interferon therapy. (Status Report [filed May 31, 2006].)

### f.    June 1, 2006 Status Conference

On June 1, 2006, I held a status conference to aid in determination of the effect of the May 2006 status reports and the fate of certain claims and of Defendants Rand, Bair, and Barber in this case.[9] (Courtroom Mins. at 2 [filed June 1, 2006].) At the status conference, the parties confirmed that Plaintiff is indeed currently undergoing Interferon therapy. (6/1/06 Status Conference Transcript at 4:18–4:19.) Plaintiff conceded that his receipt of Interferon therapy moots his claim for denial of medical treatment, but not his claim for delay of treatment. (*Id.* at

---

[9]Somewhat cryptically, the magistrate judge noted in her March 2, 2006 recommendation that "[a]t the motions hearing on August 30, 2005, [P]laintiff's counsel *appeared to agree* that [Defendants] Bair, Barber, Blake, and Rand should be dismissed, but counsel did not file a motion to dismiss them." (Recommendation at 30 [emphasis added].) It is simply inconceivable that this issue could not have been resolved in a more timely manner, and in a manner other than a status conference before this court. The torpor in dealing with this matter is another disturbing aspect of the proceedings in this case.

-16-

5:14–5:18.)  Finally, Plaintiff conceded that the case should be dismissed in its entirety as to Defendants Rand, Bair, and Barber.  (*Id.* at 3:22–4:2)

## ANALYSIS

*1.*      *Standard of Review*

    *a.*      *Review of Magistrate Judge's Recommendation*

The standard of review this court applies in considering a magistrate judge's determinations in a case depends upon the nature of the underlying motion at issue.  "Federal magistrate[] [judges] are creatures of statute, and so is their jurisdiction." *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994).  Section 636 of Title 28 of the United States Code delineates the scope of jurisdiction and authority granted to magistrate judges by Congress. 28 U.S.C. § 636; *see Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir. 1988). Pursuant to the statute, magistrate judges may issue orders on non-dispositive pretrial motions, but may only make proposed findings of fact and recommendations on dispositive motions.  *See* 28 U.S.C. § 636(b)(1)(A)–(C); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000).

District courts review magistrate's orders concerning non-dispositive motions under a "clearly erroneous or contrary to law" standard. *Id.* § 636(b)(1)(A) (2006); Fed. R. Civ. P. 72(a) (2006).  Under the clearly erroneous standard of review, the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently.  *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).  Rather, the district court must affirm the decision of the magistrate judge unless "on the entire evidence[, the district court] is left with the definite and

firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quoting

*United States v. United States Gypsum Co.*, 333 U.S. 364 [1948]).

For dispositive motions, such as the motions presently at bar, district courts must make a

"*de novo* determination of those portions of the report . . . to which objection is made." 28

U.S.C. § 636(b)(1)(C) (2006); Fed. R. Civ. P. 72(b) (2006).  In conducting a *de novo* review, the

court should make an independent determination of the issues without giving special weight to the

prior determination.  *Ocelot Oil*, 847 F.2d at 1464.  The district judge may follow a magistrate

judge's recommendation or wholly ignore it and "'conduct the review in whole or in part anew.'"

*Id.* (quoting *Mathews v. Weber*, 423 U.S. 261, 271[1976]).  Where specific factual findings are

challenged, the district court must consider the actual testimony and not merely review the

magistrate judge's report and recommendation.  *Gee v. Estes*, 829 F.2d 1005, 1009 (10th Cir.

1987).  "[W]hen a party objects to factual findings based upon conflicting evidence or testimony,

the district court must indicate that it is conducting a *de novo* determination rather than review

under the 'clearly erroneous' standard."  *Id.* (citing *Aluminum Co. of Am. v. United States

Environmental Protection Agency*, 663 F.2d 499, 502 [4th Cir. 1981]).

### b.       Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2005).  A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Preliminary Matters: Mootness and the Eleventh Amendment***

Before turning to the substance of Plaintiff's claim, I address two preliminary matters. First, "[a]n issue becomes moot when it becomes impossible for the court to grant any effectual relief whatsoever on that issue to a prevailing party."  *Smith v. Plati*, 258 F.3d 1167, 1179 (10th Cir. 2001).  In his complaint, Plaintiff seeks injunctive relief in the form of an injunction to transfer him to a medical facility and begin Interferon therapy.  (Am. Compl. at 55.)  Based on the

May 1, 2006 and May 31, 2006 status reports and the June 1, 2006 status conference, it is

patently clear that Plaintiff is currently undergoing Interferon therapy.  (Status Report [filed May

1, 2006]; Status Report [filed May 31, 2006]; Courtroom Mins. [filed June 1, 2006]; 6/1/06

Status Conference Transcript at 4:18–4:19.)  Thus, Plaintiff's claim for injunctive relief is moot,

because this court cannot grant effective relief — Plaintiff is in receipt of the Interferon therapy he

sought.  Of course, the fact that this issue is moot does not moot Plaintiff's entire case.  *See*

*Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1277 n.4 (10th Cir. 2002) (holding that

although plaintiff's claims for injunctive relief were moot, claims for damages were not.)

Plaintiff's claims for monetary damages are not moot.

     The demise of Plaintiff's claim for injunctive relief invokes the Eleventh Amendment.  It is

long- and well-established that suits against state officials in their official capacity are treated as

suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 690 n.55 (1978) ("Official-capacity suits generally represent only another way of

pleading an action against an entity of which an officer is an agent.")  With limited exceptions that

are not relevant to the instant case, "the Eleventh Amendment prohibits a citizen from filing suit

against a state in federal court."  *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Further, the Eleventh Amendment protects state officials sued for money damages in their official

capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (holding that state officials, sued for

monetary relief in their official capacities, are not "persons" subject to suit under section 1983);

*Ruiz*, 299 F.3d at 1180–81 (same).  Consequently, the Eleventh Amendment bars Plaintiff's claims

against all Defendants in their official capacities, to the extent those claims seek monetary

damages.  By way of contrast, state officials "sued in their personal capacity come to court as

individuals.  A government official in the role of personal-capacity defendant thus fits comfortably

within the statutory term 'person.'"  *Hafer*, 502 U.S. at 27.  Accordingly, I consider Plaintiff's

claims only as to Defendants in their individual capacities.

*3.*     ***Section 1983***

Section 1983 provides a remedy for constitutional violations committed by state actors or

by private actors under color of state law.  *See* 42 U.S.C. § 1983 (2006).  Specifically, section

1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

*Id.*  Thus, to establish a violation of section 1983, a plaintiff must demonstrate that: (1) the

defendant acted under color of state law to deprive him of a right, and (2) the right of which the

defendant deprived him was secured by the Constitution or the laws of the United States.  *See*

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

Here, Plaintiff alleges that Defendants acted under color of state law to deprive him of his

rights guaranteed by the Eighth Amendment.  (Am. Compl. at 36–43.)  To support a claim for

Eighth Amendment violation by delay of medical treatment, a plaintiff must allege that the

defendant committed "acts or omissions sufficiently harmful to evidence deliberate indifference to

[the plaintiff's] serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Supre v.*

*Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).  "Deliberate indifference" claims involve an

objective and a subjective component.  *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).

The objective component is satisfied where the deprivation is "sufficiently serious."  *Oxendine v.*

*Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  The deprivation is sufficiently serious if the

medical condition complained of is one "that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting

*Hunt v. Uphoff*, 199 F.3d 1220, 1224 [10th Cir. 1999]).  The subjective requirement is satisfied

where the defendant acted "with a sufficiently culpable state of mind."  *Oxendine*, 241 F.3d at

1276.  Namely, the defendant must have been aware of and yet "disregarded an excessive risk to

inmate health or safety by failing to take reasonable measures to abate the risk."  *Lopez v.*

*LeMaster*, 172 F.3d 756, 761 (10th Cir. 1999); *Sealock*, 218 F.3d at 1209 (citing *Farmer v.*

*Brennan*, 511 U.S. 825, 837 [1994]).

Here, Plaintiff does not allege that Defendants generally delayed medical treatment during

the period of his incarceration.  Indeed, Plaintiff points the court to several notations in his

medical records during that time.  (Pl.'s KCCC Resp., Ex. 9 [3/11/03 Medical Record], Ex. 10,

12/27/02 Medical Record, Ex. 11 [2/21/03 Medical Record]; Pl.'s CDOC Resp., Ex. 10 [9/4/02

Medical Record]; Pl.'s Br., Ex. 4 [9/27/02 Medical Record], Ex. 7 [2/20/03 Medical Record].)

Rather, Plaintiff's claim focuses on his requested medical treatment for hepatitis C.  (Am. Compl.

at 29–43.)  Specifically, Plaintiff asserts that Defendants violated his rights and acted with

deliberate indifference to his medical needs by delaying his entrance into substance abuse classes

that were required under the Policy in order to receive a liver biopsy, and, ultimately, Interferon therapy.[10]  (Pl.'s KCCC Resp. at 8, 12; Pl.'s CDOC Resp. at 12, 14–16.)  Thus, a representation under the Policy, not a constitutional right, sits at the crux of Plaintiff's claim.

Plaintiff asserts that the Policy, not the Constitution, guarantees Plaintiff's rights to take the substance abuse program classes.  Plaintiff denounces: (1) CDOC Defendants' "clear violation of the [] Policy" by their "failure to provide substance abuse classes;" and (2) "KCCC[] [Defendants'] deliberate and obstinate refusal to provide Plaintiff with substance abuse programs to which he was entitled under the [] Policy."  (Pl.'s CDOC Resp. at 15; Pl.'s KCCC Resp. at 12.) Plaintiff effectively uses his allegation that he was improperly, but not unconstitutionally, denied access to classes in controversion of the Policy in order to bootstrap a constitutional claim for deliberate indifference by delaying necessary medical treatment.  Accordingly, Plaintiff's claims relating to the delay of substance abuse classes are not properly styled as constitutional violations arising under section 1983 and must fail.[11]

---

[10]By Plaintiff's own admission at the June 1, 2006 status conference, he is now receiving the Interferon therapy he sought.  (Courtroom Mins. at 2 [filed June 1, 2006]; 6/1/06 Status Conference Transcript at 5:14–5:18.)  Accordingly, although Plaintiff asserts claims for deliberate indifference arising out of both denial and delay of medical treatment, I only consider the latter.

[11]Based on these allegations, Plaintiff could have styled his claim as one for breach of contract or denial of due process by Defendants' failure to refer him to classes within twenty-four days or transfer him within sixty days of his signing the contract requesting hepatitis C treatment, or, alternatively, Plaintiff could have challenged the constitutionality of the Policy.  Plaintiff opted not to do either, and, in fact, expressly affirms the constitutionality of the Policy.  (Pl.'s CDOC Resp. at 14.)

Perhaps more importantly, even if I were to accept that Plaintiff's arguments properly set forth a section 1983 claim, Plaintiff's claim must fail because of the Defendants' lack of personal participation. Plaintiff simply cannot establish a material question of fact as to whether Defendants actually did what he alleges. I briefly discuss each set of Defendants' arguments regarding Plaintiff's deliberate indifference claim below.

**4.    *CDOC Defendants***

Defendants McGarry, Bloor, and Creany object to the magistrate judge's recommendation that the CDOC Defendants' motion for summary judgment on Plaintiff's deliberate indifference claim be denied as to them. (CDOC Obj.) Defendants McGarry, Bloor, and Creany argue that they are entitled to summary judgment on Plaintiff's claim because: (1) they did not personally participate in the alleged Eighth Amendment violations; and (2) they are entitled to qualified immunity. (CDOC Obj. at 1–2, 7–13.) I need only address the first argument.

CDOC Defendants assert that Plaintiff cannot maintain his claim for deliberate indifference because he failed to allege any personal participation by CDOC Defendants in the alleged constitutional violation. (CDOC Br. at 8; CDOC Obj. at 8–9.) In his opposition brief to CDOC Defendants' motion for summary judgment, Plaintiff does not allege — and thus does not demonstrate a genuine issue of fact — that Defendant McGarry personally participated in either: (1) the alleged delay of substance abuse program classes leading to delay of liver biopsy and Interferon therapy, or (2) Plaintiff's medical treatment in general. (Pl.'s CDOC Resp., *passim*.) "Personal participation is an essential allegation in a [section] 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). Summary judgment is appropriate where there is a lack of

personal participation or knowledge of a plaintiff's alleged serious medical need.  *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000).  Accordingly, Defendant McGarry is entitled to summary judgment on Plaintiff's claim for deliberate indifference.

In his opposition brief, Plaintiff alleges that Defendants Creany and Bloor were "personally involved in decisions regarding treatment of Plaintiff's hepatitis C and liver disease," and points to several notations in his medical record.  (Pl.'s CDOC Resp. at 17, Ex. 10 [9/4/02 Medical Record]; Pl.'s Mem. Br. in Supp. of Mot. for Partial Summ. J., Ex. 8 [2/21/03 Medical Record], Ex. 12 [10/8/04 Medical Record], Ex. 13 [10/21/04 Medical Record].)  Importantly, section 1983 claims "require a showing of an affirmative link between the defendant's conduct and any constitutional violation."  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  The notations to which Plaintiff refers establish that Defendants Creany and Bloor had some involvement in Plaintiff's medical treatment, but do not establish that Defendants Creany and Bloor had any involvement in the delay in Plaintiff's ability attend substance abuse program classes.  Indeed, the only link between Plaintiff's alleged deprivation and Defendants Creany's and Bloor's conduct is Plaintiff's conclusory and unsubstantiated allegation that Defendants Creany and Bloor failed to investigate Plaintiff's complaints about being denied access to Policy-required substance abuse program classes.  (Pl.'s CDOC Resp. at 11.)  Conclusory allegations without citation to the record are insufficient to create a genuine issue of fact to defeat summary judgment.  *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000).  Moreover, any connection between this alleged failure to investigate and the lack of availability of classes to Plaintiff is speculative at best, and far from affirmative as required to

establish a section 1983 claim.  *Stidham*, 265 F.3d at 1156.  Thus, Plaintiff has not raised a genuine issue of fact as to Defendants Creany's and Bloor's personal participation in the alleged deprivation of his constitutional rights.  Accordingly, Defendants McGarry, Creany, and Bloor are entitled to summary judgment on Plaintiff's deliberate indifference claim.

**5.**      **KCCC Defendants**

KCCC Defendants object to the magistrate judge's recommendation that the KCCC Defendants' motion for summary judgment on Plaintiff's deliberate indifference claim be denied as to Defendant Hill.  (KCCC Obj.)  Specifically, KCCC Defendants argue that Defendant Hill is entitled to summary judgment on Plaintiff's claim because Plaintiff cannot: (1) satisfy the causation requirement under section 1983; (2) establish KCCC Defendants' personal participation; (3) satisfy the physical injury requirement under the PLRA; and (4) disprove that KCCC Defendants are entitled to qualified immunity.  (*Id.* at 3–5; KCCC Br. at 8–14.)  I need only address the first two arguments.

In their objection, KCCC Defendants assert that the only undisputed facts are that: (1) Plaintiff was infected with hepatitis C upon his arrival at KCCC, and (2) Plaintiff was still suffering from hepatitis C upon his release from KCCC. (KCCC Obj. at 4.)  Based on this assertion, KCCC Defendants argue that Plaintiff's claim must fail because he cannot establish Defendant Hill's actions resulted in any harm to Plaintiff.  (*Id.* at 4–5.)  In effect, KCCC Defendants' argument is a reiteration of their argument in their motion for summary judgment that Plaintiff could not establish personal participation.  (KCCC Br. at 8–14.)

Plaintiff asserts that Defendant Hill responded inappropriately to Plaintiff's grievances regarding hepatitis C treatment and the required substance abuse program, which contributed to the delay in Plaintiff's ability to attend the program, receive a biopsy, and, ultimately, receive Interferon therapy. (Pl.'s KCCC Resp. at 4–8, 13–14, 18.) Specifically, Plaintiff alleges that Defendant Hill contributed to the delay in Plaintiff's access to necessary medical care by: (1) failing to inquire into the availability of substance abuse program classes; and (2) falsely noting in a grievance response that Plaintiff refused to attend such classes, thus "covering up KCCC [] [Defendants'] failure to provide substance abuse programs by falsifying records." (*Id.* at 6–8, 13, 18.) Plaintiff's argument is unavailing. First, Plaintiff offers no proof beyond his own conclusory allegations that Defendant Hill failed to investigate the availability of substance abuse program classes. Such conclusory allegations are insufficient to create a genuine issue of fact to defeat summary judgment. *L & M Enters.*, 231 F.3d at 1287.

Evidentiary issues aside, the fatal blow to Plaintiff's claim is that Defendant Hill's alleged conduct is so far removed from Plaintiff's alleged harm — any link between the two is speculative at best. Section 1983 claims "require a showing of an affirmative link between the defendant's conduct and any constitutional violation." *Stidham*, 265 F.3d at 1156. Plaintiff does not raise a genuine issue of fact to evince that Defendant Hill's alleged failure to investigate somehow resulted in Plaintiff's inability to attend substance abuse program classes. (Pl.'s KCCC Resp., *passim*.) Plaintiff's claim must fail for the lack of an affirmative link between Defendant Hill's responses to grievances and any delay in Plaintiff's attendance at substance abuse program classes

or receipt of necessary medical care.  Accordingly, Defendant Hill is entitled to summary judgment on Plaintiff's deliberate indifference claim.

**6.     Conclusions**

Based on the foregoing it is therefore ORDERED that:

1.     The magistrate judge's recommendation (#283) is ACCEPTED in part and REJECTED in part.  The magistrate judge's recommendation is ACCEPTED with respect to:

a.     The magistrate judge's uncontested determination that all Defendants in their official and individual capacities are entitled to summary judgment Plaintiff's first, second, and third claims arising under state law.

b.     The magistrate judge's uncontested determination that Defendants Brill, Bair, Fuchs, Blake, Barber, Wederski, and Hill in their official and individual capacities are entitled to summary judgment on Plaintiff's fourth and fifth claims for violation of his First and Fourteenth Amendment rights.

c.     The magistrate judge's uncontested determination that Defendants Watkins, Masterson, Fuchs, and Brill lacked personal participation in Plaintiff's alleged harm.

d.     The magistrate judge's uncontested determination that Defendants Watkins, Masterson, Fuchs, Wederski, Brill, Blake, and C.C.A. Executive Director are entitled to summary judgment on all of Plaintiff's claims and should be dismissed in their official and individual capacities.

The magistrate judge's recommendation is REJECTED in all other respects.

4.      Plaintiff's motion for partial summary judgment (#233) is STRICKEN.

5.      KCCC Defendants' motion for summary judgment (#237) is GRANTED.

6.      CDOC Defendants' motion for summary judgment (#235) is GRANTED.

7.      As per the June 1, 2006 status conference, Defendants Bair, Rand, and Barber are dismissed in their official and individual capacities.

8.      The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff, dismissing all claims with prejudice.  Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

9.      The motions hearing set for June 22, 2006, is VACATED.

Dated this 22nd day of June, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge